**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAWRENCE RICE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lawrence Rice ("Plaintiff"), individually and on behalf of a proposed class of similarly situated persons, sues Defendant The Vanguard Group, Inc. ("Vanguard" or "Defendant"). Allegations about Plaintiff rest on Plaintiff's personal knowledge. All other allegations rest on the investigation of Plaintiff's counsel and on information and belief.

## I. INTRODUCTION

1. Vanguard, one of the nation's largest investment managers, collected and kept the Social Security numbers and other personal identifying information ("PII") of its clients. It did not protect that data. In or about October 2026, an unauthorized actor claimed to have taken it.

2. A public post dated October 16, 2026 reports that a hacker claimed on an underground forum to have stolen more than 14 million Vanguard investor SMS records (the "Data Breach").[1]

[1] ThreatMon (@MonThreat), X (Oct. 16, 2026, 3:41 PM), https://x.com/MonThreat/status/2111120347026125224.

3. The intruders reached Vanguard's data because Vanguard left its network servers inadequately defended. The theft of client Social Security numbers was a known and foreseeable risk for a firm holding this volume of sensitive financial data.

4. Vanguard has said little. To date it has issued no public statement about the Data Breach. The only disclosure Plaintiff has located is a November 4, 2026 filing with the Vermont Attorney General reporting that the Social Security numbers of 94 Vermont residents were affected; it does not say when or how the breach occurred or how many people were affected nationwide.[2]

5. Vanguard's choices caused this harm. It chose not to adopt reasonable safeguards, not to follow appropriate protocols for encrypting sensitive data, and not to tell its clients once the data was gone.

6. Plaintiff's and Class Members' PII now sits with criminals. They face a real and imminent risk of fraud and identity theft that may follow them for life, and they must now spend their own time and money guarding against it.

7. Plaintiff brings claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory relief. Plaintiff seeks damages and an injunction requiring Vanguard to fix its data security and to provide Class Members with at least ten years of credit monitoring and theft protection.

## II. PARTIES

8. Plaintiff Lawrence Rice is an adult who, at all relevant times, resided in and was a citizen of Illinois. Plaintiff is a customer of Vanguard and provided Vanguard with his PII,

---

[2] *Security Breach Notices*, Off. of the Vt. Att'y Gen., https://ago.vermont.gov/categories/security-breach-notices (last visited Nov. 9, 2026) (entry for Vanguard Group, Inc., reported Nov. 4, 2026).

including his Social Security number, to open and maintain his Vanguard account, and trusted that Vanguard would implement reasonable and industry-standard cybersecurity safeguard that PII.

9. Because of the Data Breach, Plaintiff has suffered concrete injury, including time spent researching the Data Breach and reviewing his accounts; loss of the value of his PII; and loss of privacy.

10. Because of the sensitivity of the stolen data, Plaintiff remains at substantial and imminent risk of identity theft and fraud for years to come.

11. Defendant The Vanguard Group, Inc. is a Pennsylvania corporation headquartered at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355.

## III. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). The proposed Class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Defendant.

13. The Court has personal jurisdiction over Vanguard because Vanguard is incorporated and headquartered in Pennsylvania and because a substantial part of the conduct at issue occurred in this District.

14. Venue is proper under 28 U.S.C. § 1391 because Vanguard resides in this District and a substantial part of the events and omissions giving rise to the claims occurred here.

## IV. FACTUAL ALLEGATIONS

### A. Vanguard Collected and Kept Its Clients' Most Sensitive Data

15. Vanguard manages mutual funds, exchange-traded funds, and other investment products for individual and institutional investors.

16. Plaintiff and Class Members are current and former Vanguard clients. To open and keep their accounts, they had to give Vanguard their PII, including Social Security numbers, either directly or through intermediaries.

17. Plaintiff and Class Members guard the confidentiality of their PII and took reasonable steps to keep it private. When they handed it to Vanguard, they reasonably expected Vanguard to protect it.

18. By collecting and storing this PII, Vanguard took on legal and equitable duties to secure it, to use it only for legitimate business purposes, and to disclose it only with authorization.

19. Vanguard did not meet those duties. Its inadequate security allowed criminals to enter its systems and remove Plaintiff's and Class Members' PII.

**B. The Data Breach**

20. In or about October 2026, an unauthorized actor compromised Vanguard's network. The stolen data includes Social Security numbers.

21. The attack was aimed at, and succeeded in obtaining, the confidential personal data of specific individuals, including Plaintiff and Class Members.

22. Apart from its November 4, 2026 filing with the Vermont Attorney General, Vanguard has issued no public disclosure about the Data Breach.[3] It has not explained what was taken, how, or what it means for its clients.

23. The Data Breach was the direct result of Vanguard's failure to adopt and follow basic security procedures for the PII of its current and former clients.

[3] *Security Breach Notices*, *supra* note 2.

### C. Stolen PII Is Valuable to Criminals and Harmful to Victims

24. Vanguard knew that the PII it held was highly sensitive, was valuable to criminals, and would expose its clients to identity theft and fraud if stolen. Large, well-publicized breaches at Equifax, Marriott, Anthem, Yahoo, and others made that risk plain.

25. Stolen PII is easy to sell. Anonymous dark web forums function as active marketplaces for it.[4]

26. The Federal Trade Commission warns that identity thieves use stolen personal data to commit identity theft and financial and medical fraud.[5]

27. Breaches keep growing. In 2024, 6,670 breaches exposed more than 16.8 billion records, a 6% increase over 2023.[6] Total consumer reports to the FTC, including fraud and identity theft reports, roughly doubled from 3.2 million in 2019 to 6.5 million in 2024, and 2024 saw the second-highest count of U.S. data compromises since tracking began in 2005.[7]

28. A 2022 poll of security executives predicted more social-engineering and ransomware attacks over the following two years, with the main causes being misconfigurations, human error, poor maintenance, and unknown assets.[8] Attackers also increasingly use artificial

---

[4] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), https://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.

[5] Fed. Trade Comm'n, *What to Know About Identity Theft* (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-identity-theft.

[6] Flashpoint, *2025 Global Threat Intelligence Report* (Mar. 18, 2025), https://go.flashpoint.io/2025_GTIR.

[7] Ins. Info. Inst., *Facts + Statistics: Identity Theft and Cybercrime*, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited Nov. 9, 2026).

[8] Chuck Brooks, *Alarming Cyber Statistics for Mid-Year 2022 That You Need to Know*, Forbes (June 3, 2022), https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year-2022-that-you-need-to-know/.

intelligence: 2,130 AI-related vulnerabilities were disclosed in 2025 alone, a 34.6% year-over-year increase, and 16% of 2025 breaches involved attackers using AI.[9]

29. The harm from a breach lasts. The U.S. Government Accountability Office has found that thieves may hold stolen data for a year or more before using it, and that once data is sold or posted online, fraudulent use can continue for years.[10]

30. Criminals combine data from multiple breaches into detailed identity profiles and reuse them across many fraud schemes, so exposure of sensitive identifiers is only the start of a victim's problems.[11]

31. Even without financial account numbers, stolen PII enables targeted "spear phishing," in which criminals use a victim's real name, contact details, and affiliations to win trust and extract more information. Spear phishing makes up only 0.1% of email-based attacks but is responsible for 66% of all breaches.[12]

32. A breached company is a likely repeat target. Hackers who find an organization vulnerable keep trying to breach its network, and 95% of organizations surveyed by IBM between March 2022 and March 2023 reported more than one data breach.[13] About two-thirds of companies

---

[9] Trend Micro, *Fault Lines in the AI Ecosystem: TrendAI™ State of AI Security Report* (Mar. 3, 2026), https://www.trendmicro.com/vinfo/us/security/news/threat-landscape/fault-lines-in-the-ai-ecosystem-trendai-state-of-ai-security-report; IBM, *Cost of a Data Breach Report 2025* (July 2025), https://www.ibm.com/reports/data-breach.

[10] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (2007), https://www.gao.gov/assets/gao-07-737.pdf.

[11] Matt Cullina, *Small Breaches, Big Consequences*, Forbes (June 10, 2026), https://www.forbes.com/councils/forbesbusinesscouncil/2026/06/10/small-breaches-big-consequences/.

[12] Anne Campbell, *Report: 2023 Spear-Phishing Trends*, Barracuda Blog (May 24, 2023), https://blog.barracuda.com/2023/05/24/2023-spear-phishing-trends.

[13] Beth Stackpole, *MIT Report Details New Cybersecurity Risks*, MIT Sloan Sch. of Mgmt. (Apr. 30, 2024), https://mitsloan.mit.edu/ideas-made-to-matter/mit-report-details-new-cybersecurity-risks.

hit by a cyberattack are hit again within a year, and it can take an average of 277 days to identify and contain a breach, during which the attacker's point of entry stays open to others.[14]

33. The types of data taken in the Data Breach, including Social Security numbers, are particularly valuable to thieves and leave Plaintiff and Class Members especially vulnerable to identity theft, tax fraud, medical fraud, and credit and bank fraud. Vanguard knew or should have known this and should have protected the data accordingly.

**D. Vanguard Ignored FTC Data Security Standards**

34. Section 5 of the FTC Act, 15 U.S.C. § 45, bars unfair or deceptive acts or practices in commerce. The FTC treats a company's failure to maintain reasonable security for consumers' sensitive data as an unfair practice and has brought enforcement actions on that basis.

35. The FTC's published guidance tells businesses to factor security into decision-making in every department of their business.[15] Among other steps, the FTC directs businesses to: know every connection to systems holding sensitive data and assess each for foreseeable attacks; keep sensitive data off internet-connected machines unless necessary; disable unneeded network services; secure web applications; use firewalls and periodically reviewed access controls; watch incoming traffic for intrusion attempts; and watch outgoing traffic for unusual data transfers.[16]

36. The FTC also advises businesses to keep PII no longer than needed, limit access to it, require strong passwords, use industry-tested security methods, monitor for suspicious activity,

[14] Neil Clauson, *When Cyberattackers Strike Again—and Again*, Mimecast (Nov. 13, 2024), https://www.mimecast.com/blog/when-cyberattackers-strike-again----and-again/.

[15] Fed. Trade Comm'n, *Start with Security: A Guide for Business* (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final.pdf.

[16] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

verify the security of third-party vendors, deploy intrusion detection, and keep a breach response plan ready.[17]

37. Vanguard did not follow these standards. Given the volume of client PII it held as an investment manager, Vanguard knew both its obligations and the consequences of failing them. Its failure to use reasonable measures is an unfair practice under Section 5.

**E. Vanguard Failed to Prevent, Detect, or Disclose the Breach**

38. Vanguard did not take the precautions needed to keep intruders out of its systems, even though the data it held was a predictable target.

39. Vanguard never told its clients that its systems and security practices were inadequate to protect their PII.

40. Prompt notice lets breach victims protect themselves. Plaintiff and Class Members still do not know exactly what was taken, how it was taken, where their data has gone, or what Vanguard is doing to prevent a recurrence.

**F. Plaintiff and Class Members Have Been Harmed**

41. Once PII is exposed, it cannot be fully recovered or secured against future misuse. Plaintiff and Class Members must stay vigilant for years, possibly for life, and their PII has lost value.

42. PII commands real prices on the dark web. Bank account details sell for roughly $30 to $4,255, and "fullz" bundles of complete identity data are widely available.[18]

---

[17] *Id.*

[18] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, Experian (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

43. Breach exposure and identity theft go together: government data show that identity theft victims (24%) were twice as likely as non-victims (11%) to learn in the prior year that an entity holding their personal information had been breached.[19]

45. Plaintiff and Class Members have suffered and will continue to suffer: out-of-pocket costs for credit monitoring, credit freezes, and similar protection; lost time spent mitigating the breach; theft and lost value of their PII; imminent risk of fraud and identity theft; emotional distress; and ongoing risk to the PII that remains on Vanguard's systems.

46. Vanguard has thus far offered no credit monitoring or identity theft protection. Nothing it has done accounts for the years of risk victims face or compensates them for the theft of their data.

## V. CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action individually and on behalf of a class under Federal Rule of Civil Procedure 23, defined as:

> All individuals in the United States whose PII was compromised in the Data Breach (the "Class"), including all individuals who received notice of the Breach from Defendant.

48. The Class excludes Vanguard; its subsidiaries, affiliates, officers, and directors; any entity in which Vanguard holds a controlling interest; the legal representatives, heirs, successors, and assigns of any excluded party; and the judicial officers assigned to this case and their immediate families.

49. Plaintiff reserves the right to revise the Class definition by amendment or at class certification as discovery reveals new or different facts.

---

[19] Erika Harrell, U.S. Dep't of Just., Bureau of Just. Stat., *Data Breach Notifications and Identity Theft, 2021* (Jan. 2024), https://bjs.ojp.gov/document/dbnit21.pdf.

50. **Numerosity.** On information and belief, the Class numbers at least in the thousands, so joinder of all members is impracticable. Class size and membership can be determined from Vanguard's records, including the files affected by the Data Breach.

51. **Commonality.** Questions of law and fact common to the Class include:

(a) whether Vanguard owed Plaintiff and Class Members a duty to protect their PII;

(b) whether Vanguard was negligent in collecting and storing that information and thereby breached its duties;

(c) whether Plaintiff and Class Members are entitled to damages because of Vanguard's conduct; and

(d) whether Plaintiff and Class Members are entitled to restitution because of Vanguard's conduct.

52. **Typicality.** Plaintiff's claims are typical of the Class's claims. Plaintiff and every Class Member were Vanguard clients whose PII was exposed to an unauthorized third party through the same conduct, and their claims rest on the same legal theories.

53. **Adequacy.** Plaintiff will fairly and adequately protect the Class's interests, has no interests adverse to the Class, and has retained counsel experienced in class action litigation.

54. **Predominance.** Common questions predominate over individual ones. The same practices, the same breach, and the same types of injury are at issue for every Class Member. If Vanguard breached its duty, Plaintiff and every Class Member were damaged by that breach.

55. **Superiority.** A class action is superior to other methods of resolving this controversy. It avoids duplicative individual suits, achieves economies of time, effort, and expense, promotes consistent decisions, and presents fewer management difficulties than separate litigation.

56. **Injunctive and Declaratory Relief.** Vanguard has acted or refused to act on grounds that apply generally to the Class, so injunctive and declaratory relief is appropriate for the Class as a whole under Rule 23(b)(2).

57. **Ascertainability.** The Class is defined by objective criteria, and its members can be readily identified from Vanguard's books and records.

## VI. CAUSES OF ACTION

### COUNT I
### Negligence and Negligence Per Se
### (On Behalf of Plaintiff and the Class)

58. Plaintiff references and reincorporates all preceding paragraphs as if fully set forth herein,

59. Plaintiff and Class Members gave Vanguard their PII as a condition of receiving its services.

60. By collecting and storing that information, Vanguard assumed a duty to use reasonable care to secure it and keep it from being compromised, lost, stolen, accessed, or misused by unauthorized parties. That duty included designing, maintaining, overseeing, and testing its security systems, consistent with industry standards, and ensuring that the personnel responsible for those systems protected the data.

61. Vanguard knew how sensitive the information was and what harm its clients would suffer if it were disclosed. Vanguard also stood in a special relationship with its clients, who entrusted their data on the understanding that Vanguard would take adequate precautions to protect it.

62. Vanguard knew or should have known of the risks of storing PII, the weaknesses in its own systems, and the many well-publicized data breaches in the years before the Data Breach.

63. Vanguard's duty of care arises under the common law independent of any contract. Vanguard also owed a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach, including how it happened and what data was taken, so they could act to prevent and mitigate identity theft and fraud.

64. Vanguard breached its duties by, among other things:

a. failing to adopt reasonable data security measures, practices, and protocols;

b. failing to implement security systems sufficient to protect Plaintiff's and Class Members' PII;

c. failing to secure its systems and exercise adequate oversight of its security protocols;

d. failing to implement adequate system and event monitoring;

e. retaining PII longer than reasonably necessary;

f. failing to comply with industry-standard data security practices; and

g. failing to timely disclose the nature of the Data Breach.

65. Vanguard's failures created conditions that made a foreseeable criminal intrusion possible. Plaintiff and Class Members did nothing to contribute to the Data Breach or the misuse of their data. Vanguard's conduct was especially unreasonable given the nature and volume of the PII it held.

66. Section 5 of the FTC Act, 15 U.S.C. § 45, independently required Vanguard to use reasonable measures to protect confidential data. Vanguard's violation of that statute constitutes negligence per se.

67. But for Vanguard's breaches, Plaintiff's and Class Members' PII would not have been compromised. Vanguard's failure to adopt and maintain appropriate security measures was the proximate cause of the loss and exposure of that information.

68. As a direct and proximate result of Vanguard's negligence and negligence per se, Plaintiff and Class Members have suffered and will suffer injury, including: (i) invasion and loss of privacy; (ii) lost or diminished value of their PII and loss of control over its use; (iii) theft and publication of their PII; (iv) out-of-pocket costs to prevent, detect, and recover from identity theft, tax fraud, and other misuse; (v) lost time and opportunity costs spent mitigating the Data Breach, including placing fraud alerts and credit freezes; (vi) loss of the benefit of the bargain; (vii) increased spam calls, texts, and emails; (viii) anxiety and emotional distress; and (ix) continued risk to their PII, which remains in Vanguard's possession, on information and belief unencrypted, and exposed to further breaches until Vanguard adopts adequate safeguards.

69. Plaintiff and Class Members are entitled to damages, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

70. Plaintiff references and reincorporates all preceding paragraphs as if fully set forth herein,

71. Vanguard required Plaintiff and Class Members to provide their PII, directly or indirectly, to obtain its services. By providing it, and by Vanguard's acceptance of it for that purpose, the parties formed implied contracts.

72. Under those implied contracts, in exchange for consideration and their PII, Vanguard agreed to provide its services and to: (a) use the PII only for business purposes; (b) take reasonable steps to safeguard it; (c) prevent its unauthorized disclosure; (d) give prompt and

sufficient notice of any unauthorized access or theft; (e) retain it only under secure and confidential conditions; and (f) protect it in compliance with applicable laws, regulations, and industry standards.

73. Protection of PII was a material term of these agreements. The parties' mutual intent is shown by their conduct and course of dealing. On information and belief, Vanguard also adopted written privacy policies promising to disclose PII only in limited circumstances, none of which apply to the Data Breach, and promising to comply with industry standards in protecting that information.

74. Plaintiff and Class Members reasonably expected that Vanguard's data security complied with law and industry standards, and they would not have entrusted their PII to Vanguard without its implied promise to keep it reasonably secure and to monitor its systems accordingly.

75. Pennsylvania law implies a duty of good faith and fair dealing in every contract.

76. Plaintiff and Class Members fully performed by providing their PII.

77. Vanguard breached the implied contracts by failing to implement and maintain reasonable security measures; failing to protect PII in compliance with law, regulation, and industry standards; continuing to accept and store PII after it knew or should have known of the vulnerabilities exploited in the Data Breach; failing to delete former clients' information after the relationship ended; and failing to give timely and accurate notice of the Data Breach.

78. Vanguard's breaches directly caused the Data Breach and Plaintiff's and Class Members' resulting injuries, including: (i) paying for data security they did not receive and overpaying for services; (ii) a substantially increased risk of identity theft that warrants protective and remedial expenditures; (iii) unauthorized disclosure of their PII and breach of its

confidentiality; (iv) loss of the value of their PII, for which an established market exists; and (v) lost time and present and future mitigation costs.

79. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages, and to injunctive relief requiring Vanguard to strengthen its data security and monitoring, submit to annual audits, and provide adequate credit monitoring to all Class Members.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff references and reincorporates all preceding paragraphs as if fully set forth herein, except those of Count II. This Count is pleaded in the alternative to Count II.

81. Plaintiff and Class Members conferred a benefit on Vanguard by providing their PII in connection with receiving its services. Vanguard knew of that benefit, accepted and retained it, and used the PII for business purposes.

82. Before and when Plaintiff and Class Members provided their PII, Vanguard led them to reasonably believe it would keep the information secure, and it did not disclose the deficiencies and vulnerabilities in its information systems.

83. Part of the payments Vanguard received in the ordinary course of business was meant to cover the cost of reasonable data security. Instead of providing that security, Vanguard used inadequate, low-cost measures and kept the savings, increasing its profit at its clients' expense.

84. Because Vanguard failed to provide reasonable security, it was overpaid. Equity and good conscience do not permit Vanguard to retain the benefits Plaintiff and Class Members conferred.

85. Plaintiff and Class Members lack an adequate remedy at law.

86. As a direct and proximate result of Vanguard's conduct, Plaintiff and Class Members have suffered the injuries described in Paragraph 68.

87. Plaintiff and Class Members are entitled to restitution, refunds, or damages, and to an order disgorging Vanguard's profits and other benefits from its wrongful conduct, including through a constructive trust.

**COUNT IV**
**Declaratory Judgment, 28 U.S.C. §§ 2201 *et seq.***
**(On Behalf of Plaintiff and the Class)**

88. Plaintiff references and reincorporates all preceding paragraphs as if fully set forth herein,

89. The Declaratory Judgment Act authorizes this Court to declare the parties' rights and legal relations and to grant further necessary relief. The Court may also restrain tortious conduct of the kind alleged here.

90. An actual controversy exists over whether Vanguard's current data security is adequate to protect Plaintiff's and Class Members' PII from further breaches. Plaintiff alleges it is not. Plaintiff continues to suffer injury from the Data Breach and faces an imminent risk of further compromise.

91. Plaintiff asks the Court to declare that: (a) Vanguard owes a legal duty under the common law and applicable state statutes to secure its clients' PII and to timely notify affected individuals of a data breach; and (b) Vanguard continues to breach that duty by failing to use reasonable measures to secure the PII in its possession.

92. The Court should also enter a corresponding prospective injunction requiring Vanguard to use security protocols consistent with law and industry standards.

93. Without an injunction, Plaintiff will suffer irreparable injury and lack an adequate legal remedy if another breach occurs. The risk is real, immediate, and substantial, and many resulting injuries cannot be readily quantified.

94. The balance of hardships favors Plaintiff. Plaintiff faces substantial identity theft and other harm, while Vanguard's cost of complying with an injunction to use reasonable security is relatively minimal and is an obligation Vanguard already has.

95. An injunction serves the public interest by preventing another breach at Vanguard and the injuries it would cause to Vanguard's clients.

## VII. PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, asks the Court to enter judgment against Vanguard and to award:

A. an order certifying the Class, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

B. equitable relief barring Vanguard from continuing the wrongful conduct alleged, including the misuse or disclosure of Plaintiff's and Class Members' PII, and from withholding prompt, complete, and accurate disclosures;

C. equitable relief requiring Vanguard to adopt appropriate methods and policies for collecting, storing, and securing client data, and to disclose with specificity the types of PII compromised in the Data Breach;

D. restitution and disgorgement of revenues wrongfully retained;

E. an order requiring Vanguard to pay for at least ten years of credit monitoring for Plaintiff and Class Members;

F. actual, compensatory, and statutory damages and statutory penalties, in amounts to be determined, as permitted by law;

G. punitive damages as permitted by law;

H. attorneys' fees, costs, and expenses, including expert fees;

I. pre- and post-judgment interest; and

J. any other relief the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: November 9, 2026

Respectfully submitted,

*<u>/s/ Andrew W. Ferich</u>*
Andrew W. Ferich* (PA I.D. No. 313696)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
aferich@ahdootwolfson.com

*Attorney for Plaintiff and the Proposed Class*